# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

**NILESH S. PATEL,**

Plaintiff,

v.

Civil Action No. 7:17-CV-85 (HL)

**LANIER COUNTY, GEORGIA; CHARLES N. "NICK" NORTON, Sheriff, Lanier County Georgia, in his official, supervisory, and individual capacities; and JAMES SMITH, Deputy Sheriff, Lanier County, Georgia, in his official and individual capacities,**

Defendants.

## ORDER

Plaintiff Nilesh "Neil" S. Patel filed this lawsuit against Defendants Lanier County, Georgia, Charles N. "Nick" Norton, and James Smith alleging violations of his constitutional rights under 42 U.S.C. § 1983, as well as Georgia state law tort claims. Plaintiff contends that Defendants violated his constitutional rights by using excessive force and delaying medical care in response to his serious medical needs. Plaintiff voluntarily dismissed Defendants Lanier County and Charles N. "Nick" Norton, Lanier County Sheriff on August 20, 2018. (Doc. 51). Now before the Court is Defendant Deputy Smith's Motion for Summary Judgment. (Doc. 56). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## I.    FACTUAL BACKGROUND[1]

On August 29, 2016, Plaintiff was arrested in Lanier County on charges of theft by taking and criminal damage to property, and, following his arrest in August of 2016, Plaintiff was detained at Cook County jail for the next five weeks. (Doc. 74, ¶¶ 2-4). On October 4, 2016, Plaintiff was transported from Cook County jail to the Lanier County courthouse for a bond hearing. (Id. at ¶ 1). At the hearing, Plaintiff was granted bond, but the bond order only allowed Plaintiff to be released once a cash or property bond in the amount of $25,000 was posted. (Id. at ¶ 6). Plaintiff did not post bond while at the Lanier County courthouse and had to be transported back to Cook County jail. (Id. at ¶ 7). After the bond hearing, Defendant Deputy Smith directed Plaintiff and other inmates into a Lanier County Sheriff's Office transport van. (Id. at ¶ 10). Defendant then made two stops. First, he stopped at Berrien County jail where several detainees exited. (Id. at ¶ 12). Next, Defendant went to Cook County jail where Plaintiff returned to his original cell. (Id. at ¶ 15). Shortly thereafter, Plaintiff's name was called, and he went to the front desk where he was told that his friend Mike had posted a transfer property bond for him using property located in Clinch County as surety. (Id. at ¶ 17).

Lanier County Sheriff's Office then contacted Defendant to inform him that an individual had posted bond for Patel and that he needed to be transferred back

---

[1] Unless otherwise noted, the facts are largely undisputed.

to Lanier County Sheriff's Office to finish his bond paperwork for release. (Id. at ¶¶ 19-20). Defendant informed the caller from Lanier County that he had inmates in the van that needed to be transferred to the Lowndes County jail before returning Plaintiff to Lanier County. (Id. at ¶ 21). The caller from Lanier County agreed because another inmate needed to be transported from Lowndes County jail to Lanier County Sheriff's Office. (Id. at ¶ 22).

Plaintiff changed into his own clothes, was loaded into the back compartment of the van, and the van departed from Cook County jail. (Id. at ¶ 23). Defendant parked the van in the sally port at Lowndes County jail at 2:53 p.m. (Doc. 72, ¶ 18). Defendant turned off the van and proceeded to unload inmates from the van's middle and rear compartments. (Id. at ¶ 19). Once the inmates were unloaded, Defendant escorted the other inmates inside the jail and left Plaintiff locked inside the van. (Id. at ¶ 21). The windows were rolled up; however, there is a dispute of fact as to whether Defendant left the ventilation fans on inside the van. (Doc. 74, ¶ 27). The outside temperature was approximately 85 degrees Fahrenheit. (Id. at ¶ 26). Defendant returned to the van fifty-five minutes later with the inmate he was to transport to Lanier County, Brittney Grant. (Id. at ¶ 28). After Defendant opened the side door of the van to allow Grant to get into the van, Defendant then walked to the back of the van to open the two rear doors. (Id. at ¶ 29). Defendant found Plaintiff "sitting on the bench towards the back door, leaned up," and appearing to be asleep. (Doc. 65, 58:1-2). Defendant testified that Plaintiff

"had some sweat on his forehead," but he did not seem to be breathing heavily. (Id. at 59:23-60:2). When Plaintiff did not respond to Defendant calling his name, Defendant performed a sternum rub. (Id. at 58:9-18). Defendant testified that once revived, Plaintiff told Defendant he had passed out from the heat. (Id. at 58:19-24). Plaintiff then asked Defendant for a bottle of water. (Id. at 60:8-10; Doc. 61, 34:3-4). Defendant testified that he did not have any bottles of water with him and offered to stop at a store on the way to purchase water for the Plaintiff, but Plaintiff "threw up his hand and [] said, no, let's just go." (Doc. 65, 60:12-17). Plaintiff testified that he does not remember Defendant's response to his request for water or that he told Defendant to continue on instead of stopping to get water. (Doc. 61, 34:1-16).

Defendant left Lowndes County jail at 3:58 p.m. for Lanier County Sheriff's Office in Lakeland, Georgia. (Doc. 72, ¶ 56). When the parties arrived at Lanier County Sheriff's Office at 4:20 p.m., Defendant found Plaintiff laying on the floor of the van. (Doc. 74, ¶ 35; Doc. 65, 61:13-18). The parties dispute whether Plaintiff was unconscious at the time Defendant saw Plaintiff laying on the floor of the van. (Doc. 74, ¶ 36). Plaintiff advised Defendant that he had passed out again during the drive. (Id.). However, Plaintiff then got out of the van and was able to walk without assistance into Lanier County Sheriff's Office. (Doc. 56, ¶¶ 38-39).

Cameras in Lanier County Sheriff's Office hallway and holding room capture the events that unfolded next on video. (see Def.'s Mot. Summ. J. Ex. L).[2]

While in the hallway of Lanier County Sheriff's Office, Plaintiff stopped to get a cup of water from the water cooler before entering Lanier County Sheriff's Office holding room at 4:22 p.m. (Ex. L "Hall," 00:00:35). As Plaintiff stopped to get water Defendant followed Grant into the holding room, leaving Plaintiff in the hallway. (Id.). Plaintiff then entered the holding room where he and Grant sat in chairs while waiting for Defendant to return with their paperwork. (Id. at 00:01:14). Defendant reentered the room at 4:23 p.m. (Id. at 00:01:37). The video shows that once Defendant came back into the holding room with Plaintiff's paperwork, Plaintiff appeared sitting upright in the chair, talked to Defendant, and signed the paperwork given to him by Defendant. During the exchange, there are a few instances where Plaintiff appeared to be breathing heavily. (Id. at 00:01:54). Defendant then exited the room again, and at this time Plaintiff visibly declined: he began breathing rapidly, leaned his head back with his eyes closed, and his mouth opened and closed in quick succession. (Id. at 00:03:54). Grant used a shirt to dab Plaintiff's face, neck, and head and splashed his face with water. (Id. at 00:04:23). Defendant then returned to the holding room, where, as he testified in his

_____

[2] In determining whether there is a genuine issue of fact dispute, the Court must view "the facts in the light depicted by the video[]" and may not adopt a version of the facts that is "utterly discredited" by the video. Scott v. Harris, 550 U.S. 372, 380-81 (2007).

deposition, he observed Plaintiff shaking and saw his nose was running. (Doc. 65, 76:22-77:2). Defendant put on gloves, walked over to Plaintiff, and appeared to check his vital signs. (Ex. L "A&B," 00:06:52). Paramedics arrived at 4:31 p.m. and began immediately assisting Plaintiff. (Id. at 00:10:28). Plaintiff was then transported to South Georgia Medical Center in Valdosta. (Doc. 74, ¶ 46). Plaintiff was diagnosed and treated for heat exhaustion, heat syncope, dehydration, and panic attack. (Id.).

Plaintiff filed this lawsuit asserting constitutional violations for use of excessive force and failure to provide medical care pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also asserts state law claims of intentional infliction of emotional distress and negligence. (Id.). Defendant moves the Court to grant summary judgment in his favor because Plaintiff's claims both fail on the merits and are barred by qualified and official immunity. Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. 73) withdraws his claims against Defendant in his official capacity. Thus, the only remaining claims for the Court's consideration against Defendant Smith in his individual capacity are the following: (1) § 1983 claim for excessive force; (2) § 1983 claim for failure to provide medical care; (3) intentional infliction of emotional distress; (4) negligence; (5) attorney fees; and (6) punitive damages.

## II.  SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'" United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (emphasis in original) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 1438 (internal quotation marks and citation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 323. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citation omitted). A material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Id. at 248.

Summary judgment must be entered "against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at

322.

## III.  ANALYSIS

Defendant argues he is entitled to qualified immunity as to the excessive

force and deliberate indifference claims, and official immunity as to the state law

claims. The Court agrees.

### A. Qualified Immunity

"Qualified immunity offers complete protection for individual public officials

performing discretionary functions 'insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would

have known.'" Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When properly applied, it protects

'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft

v. al-Kidd, 563 U.S. 731, 743 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341

(1986)). "Once discretionary authority is established, the burden then shifts to the

plaintiff to show that qualified immunity does not apply." Edwards v. Shanley, 666

F.3d 1289, 1294 (11th Cir. 2012) (quoting Lewis v. City of W. Palm Beach, 561

F.3d 1288, 1291 (11th Cir. 2009)). To meet this burden, a plaintiff must establish

that "the officer's conduct amounted to a constitutional violation" and "the right violated was 'clearly established' at the time of the violation." City of W. Palm Beach, 561 F.3d at 1291. This two-step analysis may be completed in whatever order is deemed most appropriate for the case. Manners v. Cannella, 891 F.3d 959, 968 (11th Cir. 2018) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)).

The clearly established law must provide a defendant with "fair warning" that his conduct deprived the plaintiff of a constitutional right. Hope v. Pelzer, 536 U.S. 730, 739-41 (2002). A plaintiff "can demonstrate that the contours of the right were clearly established in several ways." Terrell v. Smith, 668 F.3d 1244, 1255 (11th Cir. 2012). First, a plaintiff can show that "a materially similar case has already been decided." Id. (internal quotation marks and citations omitted). Second, a plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." Id. (internal quotation marks and citation omitted). "Finally, the conduct involved in the case may 'so obviously violate th[e] constitution that prior case law is unnecessary.'" Id. (citation omitted). "It is not enough that the rule is suggested by then-existing precedent." Wesby, 138 S. Ct. at 590. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. "Otherwise, the rule is not one that 'every reasonable official' would know." Id. (internal quotation marks omitted).

Plaintiff argues Defendant is not entitled to qualified immunity because: (1) a genuine issue of material fact exists as to whether Defendant was acting pursuant to his discretionary authority when the incident occurred; and (2) a genuine issue of material fact exists as to whether Defendant violated Plaintiff's clearly established constitutional rights.

### i.    *Discretionary v. Ministerial Authority*

Plaintiff's first argument is that Defendant was acting pursuant to a ministerial duty imposed by LCSO Policy 4.11, and, because Defendant was not acting pursuant to a discretionary duty, the burden does not shift to Plaintiff to overcome qualified immunity by proving a violation of Plaintiff's clearly established constitutional rights. Defendant disagrees and argues the title and text of the policy itself establish that the policy does not apply to the task he was performing at the time of the incident.

However, the Court need not inquire whether Defendant's actions involved ministerial rather than discretionary duties because there is no distinction in the qualified immunity context under federal law. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) ("In many areas other than qualified immunity, a 'discretionary function' is defined as an activity requiring the exercise of independent judgment, and is the opposite of a 'ministerial task.' In the qualified immunity context, however, we appear to have abandoned this 'discretionary

function/ministerial task' dichotomy.").[3] Rather, to determine whether a government official was acting within the scope of his discretionary authority for purposes of immunity under § 1983, courts consider whether the official "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman, 370 F.3d at 1265 (citations omitted). It is only in the official immunity context under Georgia state law that the distinction between discretionary and ministerial duties becomes important. See generally Mann v. Taser Inter., Inc., 588 F.3d 1291, 1309 (11th Cir. 2009). Thus, Plaintiff's reliance on the distinction between discretionary and ministerial duties is unavailing as to his federal claims.

Here, Plaintiff does not seem to dispute that Defendant was acting pursuant to his job function and within the scope of his authority.[4] Transporting Plaintiff from one facility to another falls squarely within Defendant's legitimate job description

---

[3] "Instead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of the type that fell within the employee's job responsibilities . . . . the inquiry is not whether it was within the defendant's authority to commit the allegedly illegal act. Framed that way, the inquiry is no more than an untenable tautology." Holloman, 370 F.3d at 1265-1266 (quoting Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998)).

[4] Plaintiff appears to misunderstand the law as it pertains to qualified immunity and official immunity. In the qualified immunity section of Plaintiff's response brief (Sections B and B(1)), Plaintiff states "the argument, legal authority, and facts applicable to this section are discussed below in Sections C and C(1) of this brief and are adopted herein." (Doc. 73, p. 12). In sections C and C(1) Plaintiff relies on Georgia law to argue that Defendant is not entitled to official immunity as to Plaintiff's state law claims. However, as explained above, the standards for overcoming qualified immunity in the federal context differ from overcoming official immunity in the state law context.

as a deputy whether such action be characterized as ministerial or discretionary. In reaching this conclusion the Court looks only to Defendant's general task at the time of the alleged unconstitutional conduct—transporting Plaintiff. See Holloman, 307 F.3d at 1266 ("In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside that it may have been committed for an unconstitutional purpose . . . ."). There is no evidence to suggest that Defendant was not authorized to transport Plaintiff in the first place, or that he acted outside the scope of his authority in doing so. Because Defendant was acting within his discretionary authority at the time the incident occurred, the burden then shifts to Plaintiff to demonstrate that qualified immunity is not appropriate. See Lumley v. City of Dade City, 327 F.3d 1186, 1194 (11th Cir. 2003). For both his excessive force and failure to provide medical care claims, Plaintiff must establish that (1) Defendant violated his constitutional rights, and (2) that those constitutional rights were clearly established at the time of the incident. Terrell, 668 F.3d at 1250.

B. Excessive Force Claim

Defendant argues that he is entitled to qualified immunity as Plaintiff has not met his burden to prove that Defendant's conduct violated a constitutional right that was clearly established at the time it occurred. Plaintiff disagrees and conclusively argues that Defendant "violated Patel's right to be free from excessive force when he confined Plaintiff to a hot van in a sally port and left him unattended for nearly an hour with no ventilation and without justification." (Doc. 73, p. 13).

12

To establish an excessive force claim in violation of the Fourteenth Amendment, a "pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015). "[P]roof of intent . . . to punish is [not] required for a pretrial detainee to prevail . . . [;] a pretrial detainee can prevail by providing . . . objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." Id. at 2473-74. Whether the force was objectively unreasonable "turns on the facts and circumstances of each particular case." Id. at 2473 (internal quotation marks and citation omitted). This inquiry is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. The Supreme Court provided a list of non-exclusive factors for courts to consider when determining the reasonableness or unreasonableness of the force:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. Courts are also to keep in mind that "[o]fficers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" Id. at 2474 (quoting Graham v. Connor, 490 U.S.

386, 397 (1989)). Further, "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." Id. Moreover, even if Defendant's use of force was unreasonable, Defendant is still entitled to qualified immunity unless no reasonable officer under the same circumstances could believe that Defendant's use of force was reasonable. Stephens v. DeGiovanni, 852 F.3d 1298, 1326-27 (11th Cir. 2017).

### a. Violation of a Constitutional Right

Plaintiff relies on the factors in Kingsley for the applicable excessive force standard under § 1983. 135 S. Ct. 2466 (2015).[5] Plaintiff's attempt at characterizing his arguments as fitting within Kingsley's factors show that the facts of this case do not square with an excessive force analysis. Plaintiff has cited no authority to show that Defendant's conduct can be properly characterized as a use of force. Here, there was no use of physical force or evidence that Defendant's actions in leaving Plaintiff in the transport van were an attempt to control any risk of harm or threat of violence.

---

[5] The previous standard for excessive force required a plaintiff to show that the force was applied "maliciously or sadistically for the very purpose of causing harm." See Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005). Kinglsey abrogated that standard and now requires a pretrial detainee only show that the force used was "objectively unreasonable."

Courts do, however, analyze claims brought by arrestees left in hot conditions as an excessive force claim, but that is because the Fourth Amendment is the proper constitutional provision applicable to arrestees. Lee v. Ferraro, 284 F.3d 1188 (11th Cir. 2002) ("The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."). However, Plaintiff was a pretrial detainee at the time of the incident giving rise to this case and his claims arise under the Fourteenth Amendment. See Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) ("The standard for showing excessive force in violation of the Fourteenth Amendment . . . is higher than that required to show excessive force in violation of the Fourth Amendment.").[6]

The Eleventh Circuit has held that a prisoner or pretrial detainee's "exposure to extreme heat without adequate cooling or ventilation can give rise to a constitutional claim given the health and safety risks associated with exposure to high temperatures," but those claims are properly adjudicated as a conditions of confinement claim under the Eighth and Fourteenth Amendments. See Chandler

---

[6] Even if this were the appropriate analysis, Plaintiff's claim would likely fail. See Borsella v. Parker, 2013 WL 375480 (M.D. Fla. Jan. 31, 2013) (arrestee confined to police car for thirty-five minutes does not violate Fourth Amendment); Sebastian v. Ortiz, 2017 WL 4382010 (S.D. Fla. Sept. 29, 2017) (arrestee's confinement in a police car for an hour is not a Fourth Amendment constitutional violation); Smith v. Doe, 2017 WL 2464126 (M.D. Fla. June 7, 2017) (arrestee left in unventilated police car for thirty-five to forty minutes on hot day is insufficient to establish excessive force under Fourth Amendment as a matter of law).

v. Crosby, 379 F.3d 1278, 1294 (11th Cir. 2004) (recognizing that the Eighth Amendment applies to prisoner claims of inadequate cooling and ventilation); Groover v. Israel, 684 F. App'x 782, 786 (11th Cir. 2017) (finding that transportation in unventilated van in hot temperatures with limited access to food or water constitutes extreme condition in violation of Eighth amendment).

While Plaintiff has pleaded his case as an excessive force claim and used Kingsley's factors to oppose Defendant's Motion for Summary Judgment, the tenor of Plaintiff's arguments regarding his allegations ring of a conditions of confinement claim rather than an excessive force claim. However, the elements of a conditions of confinement claim differ significantly from those of an excessive force claim, and the Court "may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity." GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998). Further, "[a] district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." See Wagner v.

Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002).[7] Thus, in analyzing Plaintiff's claims within the Kinglsey excessive force framework, the Court finds that Plaintiff has failed to meet his burden in proving Defendant violated Plaintiff's constitutional rights through use of excessive force.[8]

As the Supreme Court has held: "liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." Kingsley, 135 S. Ct. at 2472 (quoting County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) (emphasis in original) ("Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim. But if the use of force is deliberate—*i.e.,* purposeful or knowing—the pretrial detainee's claim may proceed."). Defendant's conduct may have been negligent, but that is not the standard required for overcoming qualified immunity. Accordingly, Plaintiff's excessive force claim must, therefore, be **DISMISSED**.

---

[7] At the March 5, 2019 hearing on Defendant's Motion for Summary Judgment, the Court posed the question to Plaintiff whether this case should be analyzed under the conditions of confinement framework. Plaintiff's counsel responded that while Plaintiff's allegations may be construed as a conditions of confinement claim in addition to an excessive force claim, Plaintiff has not pled his case as a conditions of confinement claim. Plaintiff did not request leave to amend.

[8] Further, completely absent from Plaintiff's Response to Defendant's Motion for Summary Judgment is any argument addressing the second part of Plaintiff's burden to overcome qualified immunity—whether the law was clearly established at the time of the alleged constitutional violation.

C. Failure to Provide Medical Care

Plaintiff contends that Defendant was deliberately indifferent to his serious medical needs by failing to obtain prompt medical care and by delaying medical treatment. "Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). However, pretrial detainees like Plaintiff "plainly have a Fourteenth Amendment due process right to receive medical treatment for illness and injuries." Jackson v. West, 787 F.3d 1345, 1352 (11th Cir. 2015) (internal quotation marks omitted). In either event, "the standards under the Fourteenth Amendment are identical to those under the Eighth." Goebert, 510 F.3d at 1326.

To prevail on such a claim, the plaintiff must first show that the prisoner had an objectively serious medical need—"one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Next, the plaintiff must show that the defendant was deliberately indifferent to that need, in other words, that he had subjective knowledge of a risk of serious harm but disregarded that risk by conduct that is more than gross negligence. Id. Indeed, the care must be "so grossly incompetent,

18

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). Finally, there must be a causal connection between the deliberate indifference and the prisoner's injury. Id. "[W]here medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs…" McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). When considering a claim that a defendant delayed medical treatment to a plaintiff, the "relevant factors include: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id. (quotation omitted).

It is not clear from Plaintiff's complaint whether he intends to assert a claim against Defendant for failing to provide medical care at the moment Defendant first found Plaintiff unresponsive at Lowndes County jail, or whether he intends to assert a claim against Defendant for delaying medical treatment at Lanier County Sheriff's Office, or a combination thereof. But "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment . . . Rather, the onus is upon the parties to formulate arguments." McIntyre v. Eckerd Corp., 251 F. App'x 621, 626 (11th Cir. 2007) (quoting Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Regardless, Plaintiff has failed to show Defendant was deliberately

indifferent in either failing to provide medical care for Plaintiff or in delaying medical care.

Plaintiff fails to cite to any case law or evidence to support his contention that his unresponsiveness when Defendant returned from inside Lowndes County jail (which was alleviated after Defendant performed a sternum rub) was an objectively serious medical need. Additionally, even if Plaintiff's condition while at Lowndes County jail did in fact constitute an objectively serious medical need, Plaintiff has failed to put forth evidence that Defendant was subjectively aware of a serious risk of harm and disregarded that risk by conduct that is more than mere negligence. To show that Defendant was deliberately indifferent Plaintiff suggests that Defendant should have taken him into the Lowndes County jail for treatment after finding him unresponsive, and states that if he had, "Patel would not have suffered from the serious medical injuries supported by his medical records and expert testimony." (Doc. 73, p. 19). Plaintiff also states that "[e]ven if Patel's condition was not starkly apparent to Smith, although the evidence demonstrates it was clearly obvious, a lay person or any other officer would have recognized the need to provide Patel with medical treatment." (Id.). However, speculations are not evidence of deliberate indifference. See Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient.").

Further, Plaintiff has failed to provide evidence that upon arriving at Lanier County Sheriff's Office, Plaintiff had an objectively serious medical need and that Defendant was deliberately indifferent to Plaintiff's needs by intentionally delaying medical care. "[A]n official acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay." Goebert, 510 F.3d at 1330. It is undisputed that Defendant found Plaintiff laying down on the floor of the van upon their arrival at Lanier County Sheriff's Office. Plaintiff advised Defendant that he had passed out again, but he then got out of the van and was able to walk without assistance into the Lanier County Sheriff's Office. (Doc. 56-2, ¶¶ 38-39). In the video, Defendant can be seen entering the holding room where Plaintiff had been sitting for two minutes. (Ex. L "A&B," 00:01:35). Defendant handed Plaintiff his bond paperwork and the two can be observed talking with each other. It is not until after this conversation that Plaintiff began exhibiting what could be considered an objectively serious medical need. The exact moment Plaintiff informed Defendant that he was having trouble breathing and needed an ambulance cannot be discerned from the record, but less than ten minutes elapsed between the time Plaintiff entered the holding room and paramedics arrived. There is no evidence that after observing Plaintiff's deteriorating state that Defendant purposefully delayed calling an ambulance knowing that it would exacerbate Plaintiff's condition. As the Eleventh

Circuit has held, "'it is obduracy and wantonness, not inadvertence or error in good faith,' that violates the Eighth Amendment in 'supplying medical needs.'" Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). The Court does not find that Defendant's conduct is so "grossly inadequate" to rise to the level of a constitutional violation. Magwood v. Sec'y, Fla. Dep't of Corr., 652 F. App'x 841, 844 (11th Cir. 2016) (per curiam).

Thus, as Plaintiff cannot meet his burden of proving that Defendant was deliberately indifferent to a serious medical need, he fails to show that Defendant committed a constitutional violation. Therefore, his claim must be **DISMISSED**.

### D. State Law Claims

Plaintiff has alleged state law claims for intentional infliction of emotional distress and negligence. Although Defendant argues that these claims must fail on the merits, it is not necessary for the Court to engage in an analysis of whether these claims are meritorious as Defendant is entitled to official immunity. The doctrine of official immunity "offers public officers and employees limited protection from suit in their personal capacity." Cameron v. Lang, 274 Ga. 122, 123 (2001). A suit against a governmental employee sued in his individual capacity "is barred by official immunity where the public official has engaged in discretionary acts that are within the scope of his or her authority, and the official has not acted in a willful or wanton manner; with actual malice; or with the actual intent to cause injury." Brown v. Penland Constr. Co., 281 Ga. 625, 625-26 (2007); see also Ga. Const.

art. I, § 2, para. IX(d). Plaintiff disputes that Defendant acted pursuant to discretionary authority.

Under Georgia law, an officer is entitled to official immunity for injuries caused by his actions unless he negligently performed "ministerial functions" or performed "official functions" "with actual malice or with actual intent to cause injury." Gilbert v. Richardson, 264 Ga. 744, 753 (1994) (quoting Ga. Const. art. I, § 2, para. IX(d)). Georgia courts define "official functions" as "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Gilbert, 264 Ga. at 753. Plaintiff alleges that Defendant was acting pursuant to a ministerial duty because LCSO policy 4.11 governed his actions at the time the incident occurred. Defendant argues that the policy applies only to recently arrested persons and not to Plaintiff, a pretrial detainee.

Examination of the record affirms Defendant's position that LCSO Policy 4.11 applies only to instruct an officer on the procedure used to transport a person immediately after an arrest. The policy contains instructions for checking the arrested person for weapons or contraband, to provide the dispatcher with information about the arrested person such as name, date of birth, and arrest location and destination of transport. (Doc. 72-5, p. 2). Further, Lieutenant Cuellar testified that LCSO Policy 4.11 did not pertain to Defendant's task of transporting detainees at the time of the incident, but to transporting a person immediately after arrest. (Doc. 63, 44:22-24, 45:22-25). Therefore, Defendant was not acting

23

pursuant to a ministerial duty, and Plaintiff may only overcome official immunity if he can provide evidence that Defendant acted with actual malice.

In the context of official immunity, "actual malice" requires "a deliberate intention to do wrong." Bateast v. DeKalb County, 258 Ga. App. 131, 132 (2002). A "deliberate intention to do wrong" means "the intent to cause the harm suffered by the plaintiff[ ]." Murphy v. Bajjani, 282 Ga. 197, 203 (2007). Similarly, "actual intent to cause injury" requires "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Kidd v. Coates, 271 Ga. 33, 33 (1999). "Our task is not to decide, with the benefit of hindsight, what the officers should have done. We are concerned only with whether their behavior showed a deliberate intent to commit a wrongful act." Selvy v. Morrison, 292 Ga. App. 702, 707 (2008).

Plaintiff has pointed to no evidence that Defendant acted with actual malice. Rather, Plaintiff states that Defendant's intent to harm Plaintiff can be inferred from the facts and circumstances on the record and lists several facts that purportedly evidence Defendant's intent. But these facts do not demonstrate actual malice or intent to cause harm. See Adams v. Hazelwood, 271 Ga. 414, 415 (1999). Accordingly, Defendant is entitled to official immunity, and summary judgment must be granted in favor of Defendant as to Plaintiff's state law claims.

E.  Punitive Damages and Attorney Fees

Defendant also moves for summary judgment on Plaintiff's prayer for punitive damages and attorney fees. Having concluded that Defendants are entitled to qualified immunity as to Plaintiff's § 1983 claims and official immunity as to Plaintiff's state law claims, Plaintiff's claims for punitive damages and attorney fees pursuant to 42 U.S.C. § 1988 fail as a matter of law.

F.  Motion to Quash

In light of the Court's ruling on Defendant's Motion for Summary Judgment, the Government's Motion to Quash (Doc. 59) and Plaintiff's Motion to Compel (Doc. 77) are **MOOT**.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgement (Doc. 56) is **GRANTED**. Accordingly, the Government's Motion to Quash (Doc. 59) and Plaintiff's Motion to Compel (Doc. 77) are **DISMISSED as MOOT.**

**SO ORDERED**, this 29th day of March, 2019.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

ehm